IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ERIC MAURICE HOLBROOK, JR. | * | |
| Petitioner, | * | |
| v. | * | Criminal Case: SAG-21-0223 |
| | | (Related Civil Action: SAG-23-1899) |
| UNITED STATES OF AMERICA, | * | |
| Respondent. | * | |

\*\*\*

## MEMORANDUM OPINION

In 2022, Petitioner Eric Maurice Holbrook, Jr. ("Petitioner") pleaded guilty to possession with the intent to distribute controlled dangerous substances in violation of 21 U.S.C. § 841. ECF 136. His plea agreement provided for an agreed, binding Fed. R. Crim. P. 11(c)(1)(C) sentence of imprisonment for 72 months, to run consecutive to a pre-existing sentence for a violation of supervised release. ECF 172-1 at ¶ 11. At the request of both parties, this Court sentenced Petitioner to the agreed sentence on the same day of his guilty plea. ECF 139, 140.

Now pending before this Court is Petitioner's Amended Motion to Vacate, Set Aside or Correct Sentence, ECF 167. The Government filed a response in opposition, ECF 172, and no reply has been received. No evidentiary hearing is necessary to resolve the issues raised. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons stated herein, Petitioner's amended motion will be DENIED.

Petitioner effectively raises two different contentions within the three "grounds" he identifies. His first two grounds allege that his two separate appointed attorneys were ineffective because they failed to raise certain arguments in connection with his motion to suppress evidence. His third ground argues that the second of those attorneys was ineffective at sentencing for failing

1

to insist on a new presentence report and for failing to make other arguments, which he contends increased the severity of his sentence.

To establish ineffective assistance of counsel in violation of the Constitution, a petitioner must meet two prongs: (1) proof that counsel's performance fell below an objective standard of reasonableness and (2) proof that counsel's inadequate performance prejudiced the petitioner. *Strickland v. Washington*, 466 U.S. 687–88 (1984). In other words, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. To prevail, a petitioner must overcome a strong presumption that his defense attorney's conduct was competent. *See id.* at 689; *see also Roach v. Martin*, 757 F.2d 1463, 1476 (4th Cir. 1985). This Court will address each of Petitioner's arguments under these standards.

   **I.     Motion to Suppress**

Petitioner's first appointed counsel filed a motion to suppress evidence derived from the wiretaps in this case. ECF 88. Petitioner's second appointed counsel adopted the motion, filed a reply, and argued the motion at a suppression hearing before this Court. ECF 115, 123. This Court ultimately denied the motion to suppress, ruling in part during the hearing and in part in a written order issued after the hearing. ECF 124. Petitioner now argues that both of his attorneys were ineffective for failing to raise certain issues in connection with the motion to suppress. Specifically, Petitioner argues that the wiretap affidavits' discussions of traffic stops were not supported by corroborating evidence, and that the "D-Line" wiretap affidavit mischaracterized an innocent conversation between Petitioner and his son as a drug-related call. ECF 167. In Petitioner's view, then, his two attorneys should have sought a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), because he could show that the affiants made a false statement or omission that was material to the probable cause determination.

A defendant bears a heavy burden when showing a *Franks* hearing is necessary, requiring "a detailed offer of proof." *See United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990); *United States v. Jeffus*, 22 F.3d 554, 558 (4th Cir. 1994). The offer of proof must generally be supported with affidavits and sworn witness statements. *Franks*, 438 U.S. at 171. And where, as here, a petitioner proceeds in part on a theory of omission, merely showing some omission does not suffice. A petitioner must show that an omission was "designed to mislead, or . . . made in reckless disregard of whether they would mislead, the magistrate." *Colkley*, 899 F.2d at 301.

Petitioner simply has not come close to meeting the *Franks* standard. He complains that, with respect to the traffic stops in the wiretap affidavits, the investigators did not provide lab reports for drugs found and did not offer any body-worn camera video. But a mere lack of corroborating evidence does not show a "design to mislead." In fact, Petitioner has not explained how the information about the traffic stops in the wiretap affidavits was misleading at all.[1] Petitioner asserts that this Court relied on the traffic stops when making "her final ruling on D-Line," ECF 167 at 6, but review of the D-Line order reveals no reference to traffic stops, *see* ECF 124. And review of the wiretap affidavits demonstrates that the traffic stops played a minute role, at best, in the overwhelming probable cause supporting the wiretaps in this case. The evidence cited (excluding any traffic stops) included information from roughly fourteen cooperating sources and informants, two controlled purchases from Petitioner, surveillance, seized text messages from another individual's cellphone, and a recorded jail call. *See* ECF 111-1. In fact, Petitioner attacked

---

[1] In its response, the Government concedes that it has found one error in the wiretap affidavit: a representation that the residue from one of the traffic stops had been submitted for lab testing (without representing any results from that testing). ECF 172 at 20–22. In fact, the residue had been placed into temporary evidence. *Id.* The issuing judge could not have been influenced or misled by that minor error, as mere submission of a substance for testing does not provide any definitive information about the nature of the substance. Additionally, as the Government notes, it also omitted an inculpatory fact—that the field testing of the residue had been positive for cocaine. This Court cannot infer any intent to mislead from these facts.

3

the wiretap in his motion to suppress in part on grounds of necessity, arguing that the scope of the evidence the Government had amassed rendered the wiretap unnecessary. ECF 115. Thus, even if the traffic stops were excised from the affidavit in their entireties, probable cause for the wiretaps would still be present.

Petitioner's other argument is that the affidavit somehow mischaracterized a phone conversation he had with his son, Zy'Sean Holbrook, over the "D-Line" phone. But the affidavit directly quotes the phone call. ECF 111-2 at 68–69. This Court relied on the quotes from the call (not any characterization) in determining that the call contained cryptic conversation indicative of narcotics trafficking, particularly when considered in conjunction with the "ample evidence of Mr. Holbrook's participation in narcotics trafficking" in the case and the frequency of communications between Zy'Sean Holbrook, a co-conspirator, and the D-Line. ECF 124 at 2. Even assuming that Petitioner believes this Court misinterpreted the call, he has not shown any falsehood or misleading omission on the part of the affiant.

Ultimately, then, Petitioner has not shown any reasonable probability that this Court would have found a *Franks* hearing to be warranted or that the outcome of his case would have been different had his counsel made a *Franks* argument or raised the issues addressed herein. The challenges his counsel made to the wiretap affidavits were reasonable and appropriate and did not constitute ineffective assistance under the *Strickland* standard.

## II. Presentence Report and Sentencing Result

Initially, in complaining about his attorney's sentencing conduct, Petitioner ignores a dispositive fact: Petitioner told this Court, under oath, that he had reached agreement with the Government that his sentence would be 72 months' imprisonment, and that he understood that if this Court imposed any lesser sentence, the Government could withdraw from the plea agreement. ECF 171 at 11. He also told this Court, under oath, that he wanted to waive his right to have a full

presentence report prepared and instead proceed to sentencing on the same date as his guilty plea. *Id.* at 19. Given those facts, Petitioner cannot possibly show that the result of his sentencing proceeding would have been different had he obtained an updated presentence report[2] or had his counsel made different arguments about his prior convictions or the COVID-19 pandemic. The result of his sentencing proceeding was exactly what it was supposed to be, 72 months, based on the agreement of all parties and the approval of the Court.

Further, the 72-month sentence agreed by the parties represented a dramatic downward variance from the advisory guidelines range of 92-115 months. Petitioner reaped the benefits of his counsel's efforts securing such an advantageous plea agreement. He cannot show either that counsel's performance was inadequate or that he was prejudiced by the agreement counsel reached.

In sum, Petitioner has not established any ineffective assistance he received from either of his counsel, and, even assuming *arguendo* that some ineffective assistance had occurred, he has not demonstrated that he suffered any prejudice. Accordingly, his *Strickland*-based motion is unavailing and will be denied. Further, Petitioner has shown no basis for this Court to issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue

---

[2] Petitioner has not explained how he would have been able to "challenge" any of the prior convictions this Court considered after reviewing them with the parties.  He refers to "a marijuana sentence that could no longer be used against" him at the time of sentencing, ECF 167 at 9, but this Court did not count any marijuana conviction when reciting the criminal history points it assigned, ECF 171 at 21 (assigning three points each for a 1998 conviction of assault second degree and handgun; a 1999 conviction for resisting arrest and assault second degree; and the 2010 federal conviction for heroin distribution, plus another two points for being on supervision at the time of this offense). Additionally, Amendment 821 at best would have reduced Petitioner's criminal history points by one "status point," reducing his total from eleven to ten. Ten criminal history points would leave Petitioner in criminal history category V. Finally, even had Petitioner been correct that his criminal history category somehow should be reduced to III, the 72-month sentence he received would be in the middle of the applicable guideline range for offense level 24, criminal history category III.  He simply suffered no prejudice from the use of the prior criminal history information instead of an updated presentence report.

under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right."); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (describing the "substantial showing" standard).

A separate order follows.


Dated: June 25, 2024

_____/s/_____<br>
Stephanie A. Gallagher<br>
United States District Judge